E-FILED
Friday, 23 June, 2017 04:52:57 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

---

| | |
|---|---|
| **LORINE MITCHELL,** | **Civil Action No. _____** |
| **Plaintiff,** | **JURY DEMANDED** |
| **v.** | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | |
| **Defendant.** | |

---

### CLASS ACTION COMPLAINT

---

COMES NOW the Plaintiff, Lorine Mitchell, individually and on behalf of all others similarly situated, and states and alleges the following for her Complaint against State Farm Fire and Casualty Company:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1.     Plaintiff Lorine Mitchell ("Plaintiff") is a citizen and resident of Waterford, Marshall County, Mississippi.  At all times relevant hereto, Plaintiff owned and resided in the dwelling located at 3859 Wilson Golden Road, Waterford, Mississippi (the "Insured Premises").

2.     Defendant State Farm Fire and Casualty Company ("State Farm") is a corporation organized under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois.  State Farm is authorized to sell homeowner and property insurance policies in the State of Mississippi, and is engaged in the insurance business in the State of Mississippi.

3.      For purposes of venue, the events giving rise to the individual and class claims that are the subject of this action occurred in part in Bloomington, Illinois.  State Farm's functional departments are headquartered in this division, including its Property & Casualty Claims Department and Systems Department. That is also where the Claims Consultants who advise State Farm claims personnel nationwide on the handling of claims generally are located, including the Claims Consultants who specifically provide guidance on labor depreciation issues. State Farm uses software to depreciate labor, and claims its settings for labor depreciation are proprietary.  This software is supported by State Farm employees in Bloomington, Illinois.

4.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

5.      This Court has personal jurisdiction, both general and specific, over State Farm.

### FACTS

 A.  The Property Insurance Policy and Casualty Loss

6.      At all times relevant hereto, Plaintiff was the insured pursuant to an insurance contract whereby State Farm agreed to insure the residential buildings located on the Insured Premises against property damage, bearing Policy No. 24-BM-L547-3 (the "Policy").   As relevant hereto, the term of the Policy was August 8, 2016 to August 8, 2017.

7.      A copy of the Policy is attached hereto as Exhibit "1".

8.      The Policy provided insurance coverage for accidental direct physical loss to the dwelling located on the Insured Premises, except as specifically excluded or limited by the Policy.

9.      This lawsuit only concerns property insurance coverage for buildings, and *not* personal contents, such as clothes and furniture.

2

10.    Pursuant to the Policy, Plaintiff paid State Farm an annual premium in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

11.    During the spring of 2017 and during the term of the Policy, Plaintiff's dwelling located on the Insured Premises suffered storm damage (the "Loss").

12.    The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy.  As it relates to the Loss, there is no applicable exclusion.

13.    Plaintiff promptly notified State Farm of the Loss on or about May 13, 2017 and made a claim against the Policy.

14.    After the Loss was reported to State Farm, State Farm sent an adjuster to inspect and adjust the Loss.

15.    After its inspection, State Farm determined that the Loss was covered by the terms of the Policy.  By letter dated May 24, 2017, State Farm stated to Plaintiff:

> Enclosed you will find a payment in the amount of $646.19.  At this time, we are paying your claim based on the cost of repairs with deduction for depreciation. Please refer to the attached estimate which outlines the basis for this actual cash value payment.  Actual cash value is the replacement costs less allowance for reasonable depreciation based on the age and general condition of your property.
>
> One of the provisions of your insurance policy is Replacement Cost Coverage.  This coverage provides for payment of the actual, necessary cost of making repairs to your dwelling without any deduction for depreciation.  However, your policy requires that repairs be completed before replacement benefits may be claimed.

16.    State Farm calculated its actual cash value ("ACV") payment obligation to Plaintiff by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

17.    The Policy does not define RCV or ACV.

3

### B.  State Farm Calculation of ACV and ACV Payment

18.      In adjusting Plaintiff's claim, State Farm affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment to the Plaintiff.

19.      State Farm did not calculate any portion of Plaintiff's loss by reference to or analysis of the alleged increases or decreases in the market value of Plaintiff's property, or the market value of any portion of Plaintiff's property.  State Farm did not conduct an appraisal of the market value of any portion of Plaintiff's property.

20.      State Farm has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the methodology actually used by State Farm, specifically including any market value methodology.

21.      State Farm used commercially available computer software to make its RCV, depreciation and ACV calculations.

22.      State Farm calculated the RCV of Plaintiff' damaged property at $3,080.15.

23.      State Farm calculated the depreciation for Plaintiff' damaged property in the amount of $1,600.23.

24.      After subtraction of the depreciation from the RCV, and also subtraction of the applicable deductible of $1,000, State Farm paid Plaintiff an ACV payment of $646.19.

25.      State Farm sent Plaintiff an estimate reflecting its ACV calculations.  A copy of the estimate is attached hereto as Exhibit "2".  Included with the estimate provided to Plaintiff by State Farm was a "Building Estimate Summary Guide," in which State Farm provided the following definitions of RCV, depreciation, and ACV:

> Replacement Cost Value (RCV) – Estimated cost to repair or replace damaged property.

4

Depreciation – The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.

Net Actual Cash Value Payment (ACV) – The repair or replacement cost of the damaged part of the property less depreciation and deductible.

26.     Plaintiff was underpaid on her ACV claim as described below.

**C.  State Farm's Practice of Withholding Labor**

27.     In this pleading, whenever reference is made to depreciating "labor," "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs necessary to restore Plaintiff's property to its condition immediately prior to the loss, as well as "removal" costs to remove damaged property, under the software program described below.

28.     The ACV payment State Farm made to Plaintiff depreciated the cost of both materials and labor required to repair or replace Plaintiff's property, even though labor does not depreciate in value over time. State Farm depreciated costs associated with labor throughout its ACV calculations.  State Farm also depreciated labor costs for other work necessary to repair and replace Plaintiff's property.

29.     State Farm's depreciation of labor costs associated with the repair or replacement of Plaintiff's property resulted in Plaintiff receiving payment for the loss in an amount less than Plaintiff was entitled to receive under the Policy. State Farm breached its obligations under the Policy by improperly depreciating the cost of labor.

30.     Plaintiff herself cannot determine the precise amount of labor that has been depreciated based upon the written estimate provided.

31.     Plaintiff concedes that finished goods and construction materials can diminish in value over time due to use, wear, obsolescence, and age. Therefore, finished goods and construction materials depreciate. In contrast, both removal labor and installation labor are not susceptible to aging or wear. Their value does not diminish over time. Conceptually, practically, and under common understanding, depreciation cannot be applied to labor to remove damaged property or repair damaged property in the context of indemnification insurance.

32.     Labor, by its nature, does not depreciate, and an insurer therefore may not depreciate labor.  For example, materials used in the repair or replacement of a roof (roofing shingles) diminish in value over time due to the wear that age and use inflict on them.  In contrast, labor is not susceptible to aging or wear, it does not lose value over time, and there is no depreciable life of labor. Labor's value does not diminish over time; only the materials depreciate.

33.     State Farm's practice of depreciating labor costs is inconsistent with the universally accepted premise that the fundamental purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss—no better and no worse. A policy, like State Farm's policy, that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of an ACV payment is to make the insured whole after the loss that occurred.

34.     To provide an example of the dispute at hand concerning depreciation of labor when calculating actual cash value, if an insured's 15 year-old roof was damaged during a hail storm necessitating replacement of the shingles, the law, common sense, and State Farm insurance policies require that, after the damage, the insured would be entitled to have on her house 15 year old shingles, or their value in money.  The insured should not bear the cost of

installing those shingles, because that would deprive her of that for which she contracted – being made whole as if the damage had not occurred.

35.      While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully depreciate repair labor. State Farm's failure to pay the full cost of the labor necessary to return Plaintiff back to her pre-loss condition left Plaintiff under-indemnified and underpaid for the Loss.

36.      State Farm materially breached its duty to indemnify Plaintiff by depreciating labor costs associated with repairing or replacing Plaintiff's property in its ACV payment, thereby paying Plaintiff less than she was entitled to receive under the terms of the Policy.

### D.  Concealment

37.      At all times relevant hereto, State Farm was under an affirmative duty to disclose the manner in which it calculates ACV payments to policyholders.

38.      To conceal its practice of depreciating labor from policyholders, State Farm did not disclose the practice in either its policies or the loss estimates provided to its insureds.  State Farm also did not separate the amounts it depreciated for labor charges from amounts it depreciated for materials in the estimates provided to insureds with their ACV payments.

39.      The commercial estimating software used by State Farm easily permits further separation of the line item charges so policyholders can determine whether labor was being depreciated.  State Farm did its best to make it impossible for an ordinary consumer to know that State Farm depreciated labor, and not merely materials, when reviewing estimates provided to policyholders.

40.      To further conceal its practice of depreciating labor in the estimates, for some line items that only contain obvious labor costs standing alone, such as removal of shingles, State

Farm did not depreciate labor—all to help avoid detection of its depreciation of labor in other line items.

41.     State Farm was in a superior position over policyholders to know that it was depreciating labor through its estimating software. State Farm controlled the settings for the software, which expressly permit an adjuster to properly limit depreciation to materials only.

42.     State Farm fraudulently concealed its breaches of contract from Plaintiff and similarly situated policyholders.

43.     The facts misrepresented, concealed, or otherwise not disclosed to Plaintiff and similarly situated policyholders were material facts that a reasonable person would have considered important in deciding whether to purchase insurance and accept ACV payments from State Farm.

44.     The concealment of information in estimates was performed by State Farm with the intent that policyholders, including Plaintiff, believe that only materials were being depreciated.

## AMOUNT IN CONTROVERSY

45.     The amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

### A.  Mississippi Damages and Injunctive Relief Class

46.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of herself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of

representation. Only to the extent it is a requirement under applicable law, the class is ascertainable.

47.     The proposed class that Plaintiff seeks to represent is defined as follows:

> All persons and legal entities insured under a State Farm homeowner or property policy who received "actual cash value" payments from State Farm for direct physical loss to a dwelling or other structure located in Mississippi in which the cost of repair or replacement labor was depreciated.

48.     Plaintiff reserves the right to amend the definition of the proposed class. The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

49.     Members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as depreciated labor may be later repaid to policyholders upon further adjustment of the claim. However, policyholders who have been subsequently repaid for initially withheld labor depreciation still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, interest.

50.     The proposed class definition, when referencing labor, includes all non-tangible depreciation of labor, including but not limited to, laborer's equipment or removal labor.

51.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that thousands of people geographically dispersed across Mississippi have been damaged by State Farm's actions. The names and addresses of the

members of the proposed class are readily identifiable through records maintained by State Farm or from information readily available to State Farm.

52.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

53.     State Farm has acted on grounds generally applicable to the proposed class in that State Farm has routinely depreciated labor costs in its adjustment of property damage claims under its policies of insurance.  It is reasonable to expect that State Farm will continue to depreciate the cost of labor to reduce the amount it pays to its insureds under these policies absent a decision by the Court.

54.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.   Whether State Farm's policy language allows State Farm to depreciate labor costs in its calculation of ACV payments;

b.   Whether State Farm's policy language is ambiguous concerning the depreciation of labor costs in calculating ACV payments, and, if so, how State Farm's insurance policies should be interpreted;

c.   Whether State Farm's depreciation of labor costs in its calculation of ACV payments breaches the insurance policies;

d.   Whether State Farm has a custom and practice of depreciating labor costs in its calculation of ACV payments;

e.   Whether Plaintiff and members of the proposed class have been damaged as a result of State Farm's depreciation of labor costs in its calculation of ACV payments;

f.   Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act;

g.  Whether Plaintiff and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitutionary damages;

h.  Whether Plaintiff and members of the proposed class are entitled to punitive damages; and

i.  Whether Plaintiff and members of the proposed class are entitled to attorney's fees and intermediate damages.

55.     Plaintiff's claims are typical of the claims of all proposed class members, as they are all similarly affected by State Farm's custom and practice concerning labor depreciation. Further, Plaintiff's claims are typical of the claims of all proposed class members because her claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same factual and legal theories.  Plaintiff is not different in any material respect from any other member of the proposed class.

56.     Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seek to represent. Plaintiff has retained counsel who are competent and experienced in class action and insurance litigation.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford

11

them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

58.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

59.     Questions of law or fact common to Plaintiff and the proposed class members, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual proposed class members are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual proposed class members to seek and obtain relief.  On the other hand, a class action will serve important public interests by permitting consumers harmed by State Farm's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct.  The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

60.     Class certification is further warranted because State Farm has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**B.  Mississippi Issues Class**

61.     Plaintiff seeks, in the alternative or prior to certification of a Mississippi Damages and Injunctive Relief Class, a Mississippi Issues Class.

62.     Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

63.     In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiff brings this action on behalf of herself and of all others similarly situated to resolve, *inter alia*, several important issues:

a.  Whether State Farm's policy language allows State Farm to depreciate labor costs in its calculation of ACV payments;

b.  Whether State Farm's policy is ambiguous concerning the depreciation of labor costs in calculating ACV payments;

c.  Whether State Farm's depreciation of labor costs in its calculation of ACV payments breaches the insurance policies;

d.  Whether State Farm has a custom and practice of depreciating labor costs in its calculation of ACV payments;

e.  Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act; and

f.  Whether any of State Farm's potential affirmative defenses apply in whole or in part.

64.     The Issues Class would be "carved at the joints" after disposition of the preliminary questions concerning State Farm's liability for breaching its contractual duty to pay

Plaintiff and members of the proposed class the ACV of their claims by unlawfully depreciating labor costs. The individual class members would then be able to rely upon the preclusive effect of the determination that State Farm's custom and practice of depreciating labor costs in calculating ACV payments is unlawful to then individually litigate specific issues such as damages. Alternatively, the Court could thereafter certify a Mississippi Damages and Injunctive Relief Class.

65.    The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

66.    Individual joinder of the members of the Issues Class would be wholly impracticable. As previously stated, Plaintiff reasonably believes that thousands of people geographically dispersed across Mississippi have been damaged by State Farm's conduct as described herein. Thus, the numerosity element for class certification is met.

67.    Questions of law and fact are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition common questions of law applicable to all class members.

68.    Plaintiff's claims are typical of the Issues Class because her claims arise from the same course of conduct by State Farm, *i.e.*, its uniform custom and practice of depreciating labor costs in calculating ACV payments to its Mississippi policyholders, and are based on the same factual and legal theories. Plaintiff's claims are, therefore, typical of the Issues Class.

69.    Plaintiff will fairly and adequately represent and protect the interests of the Issues Class. Her interest in vindicating these claims is shared with all members of the Issues Class and there are no conflicts between the named Plaintiff and the putative class members. In addition,

Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

70.     The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior. Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual class members. Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated policyholders to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## COUNT I
## BREACH OF CONTRACT

71.     Plaintiff restates and incorporates by reference all preceding allegations.

72.     State Farm entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between State Farm, Plaintiff and members of the proposed class, as well as the manner in which claims for covered losses are handled.

73.     The policies of insurance between State Farm and Plaintiff and the other proposed class members are binding contracts under Mississippi law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

74.     State Farm drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

75.     In order to receive ACV claim payments, Plaintiff complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

76.     The policies of insurance State Farm issued to Plaintiff and members of the proposed class state that, in the event of a partial loss, State Farm may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, State Farm's custom and practice has been, and is, to make such payments based upon State Farm's calculation of the ACV for the partial loss, less any applicable deductible.

77.     State Farm breached its contractual duty to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully depreciating labor costs.

78.     State Farm's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continue to benefit State Farm. Likewise, State Farm's actions damaged and continue to damage Plaintiff and members of the proposed class.

79.     Additionally, State Farm breached the Policy by failing and refusing to promptly pay the amounts individually owed to Plaintiff as required by the terms of the Policy. Specifically, Plaintiff submitted a repair estimate for the damage caused by the Loss that was significantly higher than that paid by State Farm.  As a result, Plaintiff has been damaged in the amount of the unpaid portion of her claim, including but not limited to the replacement cost of the damage to her dwelling.

80.     State Farm's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

81.     In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts State Farm unlawfully withheld from their ACV payments as labor cost depreciation.

82.     Plaintiff and members of the proposed class seek any and all relief as may be permitted under Mississippi law to remedy the ongoing breaches of contract.

## COUNT II
## NEGLIGENCE AND/OR GROSS NEGLIGENCE

83.     Plaintiff restates and incorporates by reference all preceding allegations.

84.     State Farm had a duty under Mississippi law and pursuant to the Policy to fully, fairly, adequately and correctly investigate and adjust Plaintiff's loss and claim.

85.     State Farm breached that duty in the following non-exclusive particulars:

    a.  By failing to conduct a reasonable and lawful adjustment of Plaintiff and the proposed class members' claims;

    b.  By refusing to fully pay Plaintiff and the proposed class members' actual cash value claim without conducting a complete, adequate, full, and fair investigation and adjustment of Plaintiff's claim for damage under the Policy;

    c.  By failing to fully and appropriately pay Plaintiff and the proposed class members for their loss;

    d.  By arbitrarily depreciating labor on Plaintiff and the proposed class members' claims when the policy and the law does not allow depreciation of labor;

    e.  By failing to acknowledge and pay the true actual cash value of Plaintiff and the proposed class members' insured losses;

    f.  By interpreting the Policy in an arbitrary and capricious manner, and contrary to the plain meaning and intent of the Policy in an effort to avoid, and intentionally withhold, payment for the full extent of the Loss; and

    g.  By other acts and omissions to be proven at trial.

17

86.     Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiff and the proposed class members' rights as insureds.

87.     State Farm's negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiff economic damages, including attorney's fees and litigation expenses.

## COUNT III – BAD FAITH

88.     Plaintiff restates and incorporates by reference all preceding allegations.

89.     State Farm had a duty to exercise good faith in dealing with Plaintiff.  State Farm's failure and refusal to pay the amounts contractually owed to Plaintiff and the proposed class members was arbitrary and capricious and constitutes bad faith.  State Farm's actions constitute the independent tort of bad faith refusal to pay an insurance claim in that State Farm failed to properly adjust and fully pay covered insurance claims without legitimate or arguable reason for doing so.

90.     The bad faith of State Farm is evidenced by the fact that, at all times hereto, State Farm knew, or reasonably should have known, that Plaintiff and the proposed class members were justifiably relying on the money and benefits due them under the terms of the policy and the law, as well as the actions of State Farm as set forth in the paragraphs above and below. Nevertheless, acting with conscious disregard for Plaintiff and the proposed class members' rights and with the intention of causing or willfully disregarding the probability of causing unjust hardship on Plaintiff and the proposed class members, State Farm willfully refused to fully pay Plaintiff and the proposed class members' valid claims and withheld monies and benefits rightfully due them.  State Farm was obligated to fully pay Plaintiff and the proposed class members for their damages associated with the admittedly covered loss but failed to do so, State Farm lacked an arguable or legitimate basis in law and fact for its refusal and failure to fully pay

Plaintiff and the proposed class members for their losses, and State Farm knew there was no arguable, legitimate, or justifiable basis for its refusal and failure to fully pay Plaintiff and the proposed class members for their losses. Further, State Farm acted with malice and/or gross negligence/reckless disregard to Plaintiff and the proposed class members' rights under the Policy and existing law.

91.     At all material times, State Farm owed to Plaintiff and the proposed class members as policyholders, claimants and insureds under the Policy, non-delegable, express, and implied duties, to at all times and in all things, act in good faith and with fair dealing toward Plaintiff and the proposed class members. Along with the implied duty of good faith and fair dealing, State Farm owed at all times a duty to: (1) meet the reasonable expectations of Plaintiff as policyholder; (2) investigate and pay the claim with the interest of the insured in mind and keeping the insured informed every step of the way; (3) give as much if not greater consideration to the financial interests of the insured, than it gave to its own financial interests; and (4) perform a prompt and adequate investigation and make a reasonable, good faith payment based on that investigation.

92.     State Farm breached the aforementioned duties, including the overarching duty to exercise good faith and fair dealing with Plaintiff and the proposed class members as policyholders, claimants and insureds. State Farm's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following non-exclusive actions or inactions by State Farm which were perpetuated with evil motive or with reckless indifference to the rights of Plaintiffs and the proposed class members:

> a. State Farm's intentional or reckless failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff and the proposed class members' claims when liability and the amount owed was reasonably clear;

    b.   State Farm's intentional or reckless refusal to pay Plaintiff and the proposed class members' claims and to otherwise honor its obligations under the Policy;

    c.   State Farm's intentional refusal to fully and fairly investigate and pay Plaintiff and the proposed class members' claims;

    d.   State Farm's intentional or reckless failure to properly adjust Plaintiff and the proposed class members' claims, and to pay Plaintiff and the proposed class members the full ACV amounts owed to them for their losses;

    e.   State Farm's intentional or reckless failure to fully inform Plaintiff and the proposed class members of their rights under the subject insurance policy;

    f.   State Farm's intentional or reckless concealment from Plaintiff and members of the proposed class its practice of depreciating labor costs;

    g.   State Farm's intentional or reckless failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

    h.   State Farm's offering of substantially less than the amount actually owed in an effort to deprive Plaintiff and the proposed class members of their rights under the Policy;

    i.   State Farm's intentional or reckless denial of full and appropriate ACV payment of Plaintiff and the proposed class members' claims with no honest disagreement or innocent mistake concerning the validity or the nature and amount of their claims; and

    j.   Other acts and omissions to be proven at trial.

93.    State Farm's breach of the duty to exercise good faith and fair dealing was the direct and proximate cause of actual damages sustained by Plaintiff.

94.    State Farm knew, or reasonably should have known, that Plaintiff and the proposed class members were justifiably relying on the money and benefits due them under the terms of the subject insurance policies. Nevertheless, acting with conscious disregard for the rights of Plaintiff and the proposed class members and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship, State Farm consciously refused to fully compensate Plaintiff and the proposed class members for their losses and withheld

20

monies and benefits rightfully due Plaintiff and the proposed class members. In so acting, State Farm intended to and did injure Plaintiff and the proposed class members in order to protect its own financial interests

95.     As a result of State Farm's breach of the duty to exercise good faith and fair dealing and bad faith denial of full and prompt payment as required by the law and the policy, Plaintiff is entitled to a judgment against State Farm for actual, compensatory, consequential, bad faith, and punitive damages, plus court costs, attorney's fees, and pre- and post-judgment interest at the legally allowable limit.

### COUNT IV
### DECLARATORY JUDGMENT AND RELIEF

96.     Plaintiff restates and incorporates by reference all preceding allegations.

97.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether or not further relief is or could be claimed.

98.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

99.     Plaintiff and members of the proposed class have complied with all relevant conditions precedent in their contracts.

100.     Plaintiff seeks, personally and on behalf of the proposed class, a declaration that State Farm's property insurance contracts prohibit the deduction of depreciated labor costs when adjusting losses under the methodology employed here.

101.     Plaintiff further seeks, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders,

and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by State Farm in engaging in the conduct described herein, as may be permitted by law.

102.    Plaintiff and members of the proposed class have suffered injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lorine Mitchell, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.    Enter an order certifying this action as a class action under Rule 23(a), (b)(2), (b)(3) and/or (c)(4), appointing Plaintiff Lorine Mitchell as the representatives of the class, and appointing Murphy and Murphy, LLC, Larson • King, LLP, Gilbert McWherter Scott Bobbitt, PLC, and Don Barrett, P.A. as counsel for the class;

2.    Enter a declaratory judgment, declaring that State Farm's practice of depreciation of labor costs is contrary to and breaches the insurance policies issued to Plaintiff and members of the class;

3.    Enter a preliminary and permanent injunction and equitable relief against State Farm and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4.    Enter an order that State Farm specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5.    Award compensatory damages to Plaintiff for her individual claims for the amount she is owed pursuant to the Policy as a result of the Loss;

6.     Award compensatory damages for all sums depreciated as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the class;

7.     Award extra-contractual damages for State Farm's willful, wanton, reckless, grossly negligent, and bad faith conduct, which rose to the level of an independent tort;

8.     Award punitive and exemplary damages for State Farm's tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort;

9.     Award reasonable attorney's fees;

10.    Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the class;

11.    Award pre- and post-judgment interest; and

12.    Grant such further and additional relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 23, 2017               LARSON • KING, LLP

By:  s/ David C. Linder
DAVID C. LINDER
T. JOSEPH SNODGRASS (*pro hac vice to be filed*)
30 East Seventh St., Suite 2800
St. Paul, MN  55101
(651) 312-6500
jsnodgrass@larsonking.com
dlinder@larsonking.com

G. PATRICK MURPHY
MURPHY AND MURPHY, LLC
3415 Office Park Drive, Suite D
Marion, IL  62959
(618) 248-3236
patrick@murphymurphyllc.com

J. BRANDON McWHERTER (*pro hac vice to be filed*)
GILBERT MCWHERTER SCOTT BOBBITT PLC
341 Cool Springs Blvd, Suite 230
Franklin, TN  37067
(615) 354-1144
bmcwherter@gilbertfirm.com

and

DAVID McMULLAN, JR. (*pro hac vice to be filed*)
DON BARRETT, P.A.
404 Court Square
Lexington, Mississippi 39095
(662) 834-2488
dmcmullan@barrettlawgroup.com

***Attorneys for Plaintiff and
Putative Class Representatives***

1627748