**LORINE MITCHELL**                                                                **PLAINTIFF**

**v.**                                                                **No.: 3:17cv00170-M**

**STATE FARM FIRE AND CASUALTY**                                **DEFENDANT**
**COMPANY**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's *Motion to Certify Class of a Monetary Damages Class, or in the Alternative, An Issues Class* [115] and Defendant's *Motion to Strike Declaration of T. Joseph Snodgrass* [126]. The court has reviewed the parties' submissions, along with relevant case law and evidence, and is now prepared to rule.

## BACKGROUND

Plaintiff and proposed class representative, Lorine Mitchell, maintains a residence in Waterford, Mississippi. Plaintiff insured the dwelling under a Homeowners Policy provided by Defendant, State Farm Fire and Casualty Company, and paid the requisite annual premiums for the coverage. The policy provides the following provisions for structural damages claims:

**COVERAGE A – DWELLING**

1. **A1 – Replacement Cost Loss Settlement –
   Similar Construction.**

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in **Declarations**, the damaged part of the property covered under **SECTION 1 – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, we will pay out only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

> (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;
>
> (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed . . ..

In Spring 2017, while insured under the policy, Plaintiff's dwelling suffered storm damage. On or about May 13, 2017, Plaintiff notified Defendant of the loss and made a claim under the policy. On May 24, 2017, Defendant notified Plaintiff that the payment she was receiving was the actual cash value (ACV) as calculated by Defendant. ACV, defined in the Building Estimate Summary Guide provided to Plaintiff after a claim, is the "repair or replacement cost of the damaged part of the property less depreciation and deductible." In calculating ACV, the Defendant deducted depreciation from the replacement cost value (RCV). RCV and depreciation are also defined in the Building Estimate Summary Guide. RCV is the "[e]stimated cost to repair or replace damaged property." Depreciation is "[t]he decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence."

Defendant's initial repair cost estimate listed the ACV for Plaintiff's claim as $646.19. This number was derived by taking the RCV, $3,246.42, and subtracting both the estimated depreciation of $1,600.23 and the $1,000 deductible. The estimate lists the inspected areas separately and includes a line item for the estimated RCV; the applied tax; the age, life, and condition of the property; the percentage applied for depreciation; and the ACV.

To calculate these values, Defendant relied on its Xactimate system. Xactimate allows an adjuster to insert various information for a claim. Xactimate provides the adjuster the option to select or de-select various boxes regarding depreciation—of importance to this case is the

"depreciate non-material" and the "depreciate removal" options. Once all information is inserted, the system then generates RCV, ACV, and depreciation amounts.

Plaintiff alleges that Defendant's method of calculating the ACV resulted in payment significantly lower than the amount Plaintiff should have received under the Policy—$738 lower. Plaintiff argues that Defendant, in calculating the ACV, depreciated costs associated with labor when labor is not susceptible to aging, wearing, or tearing. Specifically, certain line items, such as line item 2 (composition shingle roofing), accounted for both labor and materials and then the estimated depreciation percentage was applied to the entire line item. However, other line items that listed pure labor, such as line item 1 (remove shingle roofing), were not subjected to labor cost depreciation. Based on Defendant's practice to depreciate labor costs, Plaintiff contends that her ACV payment was less than the amount she was entitled to receive under the policy.

### Proposed Class Definition

Plaintiff Mitchell seeks certification of the following class of individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All State Farm policyholders who made a structural damage claim for property located in the State of Mississippi which resulted in an actual cash value payment during the class period from which "non-material depreciation" is still being withheld from the policyholder (i.e., has not been paid back as replacement cost benefits). The class includes policyholders that did not receive an actual cash value payment solely because the withholding caused the loss to drop below the applicable deductible. The class period only includes policyholders that received their first claim payment (or would have received their first claim payment) on or after June 23, 2014 (three years before the filing of the complaint). The class excludes all claims arising under policies with State Farm endorsement Form FE3650 or any other policy form expressly permitting the "depreciation" of "labor" within the text of the policy form. The class also excludes any claims for which the applicable limits of insurance have been exhausted.

### Plaintiff's Reliance on Declaration of T. Joseph Snodgrass

On July 20, 2018, along with her Motion to Certify Class [115], Plaintiff submitted a Declaration by attorney T. Joseph Snodgrass. In his Declaration, Mr. Snodgrass explained that he

"instructed staff from Plaintiff's counsel to perform . . . data sorting exercises" within the Excel spreadsheet (the Data Report) containing numerous insurance claims produced by State Farm. Mr. Snodgrass explained the method by which his staff sorted the Data Report and provided the total number of possible class members that resulted from each conducted sort, the approximate cash value payment for all claims, as well as the approximate percentage of potential class members who hold a homeowner's policy from State Farm.

## CLASS CERTIFICATION STANDARD

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, class certification requires a two-part analysis. First, Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Second, the proposed class must satisfy at least one of the provisions of Rule 23(b). Plaintiff seeks class certification pursuant to Rule 23(b)(3), or, in the alternative, certification of an issues class pursuant to Rule 24(c)(4). Plaintiff also seeks certification pursuant to Rule 23(b)(1).

Because this court finds class certification proper under Rule 23(b)(3) this court will not consider Plaintiff's alternative request for Rule 23(c)(4) certification of an issues class.

## DISCUSSION

### A.  Standing

"[P]laintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016). In this case, Plaintiff has established her injury. Plaintiff's home suffered damages, and upon calculating her actual cash

value payment—defined in her insurance policy as the repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*—State Farm depreciated non-material items (particularly labor). Plaintiff contends that such conduct—depreciating labor—is not allowed within the State of Mississippi or under the policy. Thus, Plaintiff has alleged and shown that she has personally been injured by State Farm's conduct.

Defendant argues that Plaintiff lacks standing as to the entire class with respect to the asserted tort claims—bad faith and negligence—because Plaintiff's claim was paid, *not* denied, and therefore, Plaintiff is unable to state viable claims as to either tort. However, as per this court's opinion regarding Defendant's *Motion to Dismiss for Failure to State a Claim* that will issue this same day, this court finds that Plaintiff can state viable claims for both torts. It is the court's opinion that Plaintiff does in fact have standing to represent the class in the asserted tort claims. However, whether Defendant's actions amount to bad faith or negligence are decisions to be made at a much later date.

As to Defendants' second argument, that Plaintiff's standing "fails as to insureds other than Homeowners insureds" because Plaintiff "has not shown that the loss settlement provisions in other State Farm policy forms are comparable to the Homeowners policy she purchased", this court finds that the class should be limited to include only insureds covered under a Homeowners policy. Plaintiff, having had more than enough time to submit evidence to prove to this court that other State Farm policies are truly comparable to the Homeowners policy at issue, only provided the court with a declaration from attorney McWherter stating that a review of State Farm policy documents was conducted and that only policies with Form FE-3650 allow for labor depreciation. This court notes that Plaintiff could have submitted relevant sections of the reviewed policies to the court and could have directed the court to the section of the policies pertaining to actual cash

value. Therefore, allowing this class to include insureds other than Homeowners, based entirely on an attorney's declaration, is improper. Plaintiff lacks standing to represent anyone other than an insured covered under a Homeowners policy, and the class will be limited (and the class definition altered) to include only Homeowners Policy holders.

Finally, as to Defendant's last argument on standing—that Plaintiff lacks standing "to represent insureds who *pursued* repairs and completed them at a cost equal to or less than ACV", this court finds that Plaintiff has standing to represent all individuals falling within the class definition who were subject to the labor depreciation method used by State Farm. From the Charlie Foster deposition, this court understands that State Farm has different default depreciation settings within its Xactimate system set to trigger according to the policy and region of the claim. In Mississippi, the default appears to depreciate labor in all claims. Plaintiff has standing to represent individuals whose claims were subject to this method of depreciation because, as will be mentioned below, the issue here is not whether actual cash value payments paid by State Farm were reasonable or sufficient, but rather whether State Farm was entitled to deduct labor depreciation from its insureds in the first place.

### B. Admissibility of Snodgrass Declaration

In this case, the Plaintiff submitted a Declaration by attorney T. Joseph Snodgrass in which he summarized the Data Report produced by State Farm. Plaintiff argues that such summary is admissible pursuant to Rule 1006 of the Federal Rules of Evidence. Defendant does not argue that Rule 1006 does not apply, but rather bases its argument on the fact that the declaration fails to "accurately reflect the underlying records." *U.S. v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000). Particularly, Defendant contends that the summary is inaccurate as the method relied upon by Plaintiff resulted in misidentification of potential class members, misidentification of relevant

claims, and error in calculating the aver damages amount. This court agrees with Defendant that the summary must be accurate. However, since Plaintiff and Defendant both relied on Excel functions, acting far beyond the technical ability and knowledge of this court, this court has no means by which to verify whether either claims—those of the Defendant or those of the Plaintiff—are accurate; therefore, the court will disregard the Declaration of Mr. Snodgrass. Nonetheless, without relying on the Snodgrass Declaration, this court still finds that class certification under Rule 23(b)(3) should be granted.

### C. Rule 23 Prerequisites

#### 1. Ascertainability

Defendant State Farm argues that the proposed class cannot be certified because the class is not ascertainable. "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Manual for Complex Litigation (Fourth) § 21.222 (2018). It is not necessary that "the class be so clearly ascertainable that every potential member can be readily identified at this stage of the litigation." *Wagner v. Cent. La. Elec. Co., Inc.*, 102 F.R.D. 196, 197 (E.D. La. 1984) (citing *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

Plaintiff defined the proposed class as:

> All State Farm policyholders who made a structural damage claim for property located in the State of Mississippi which resulted in an actual cash value payment during the class period from which "non-material depreciation" is still being withheld from the policyholder (i.e., has not been

paid back as replacement cost benefits). The class includes policyholders that did not receive an actual cash value payment solely because the withholding caused the loss to drop below the applicable deductible. The class period only includes policyholders that received their first claim payment (or would have received their first claim payment) on or after June 23, 2014 (three years before the filing of the complaint). The class excludes all claims arising under policies with State Farm endorsement Form FE-3650 or any other policy form expressly permitting the "depreciation" of "labor" within the text of the policy form. The class also excludes any claims for which the applicable limits of insurance have been exhausted.

Defendant argues that the class is not ascertainable because it encompasses unharmed individuals, identifying class members will require individualized review of each class member's claims, and some information may be in the possession of the insured. Defendant suggests that the class definition in this case is indistinguishable from the failed class definition in *Johnson v. Kan. City S. Ry. Co.*, 224 F.R.D. 382 (S.D. Miss. 2014). However, this court finds that the class definition in the present case is in fact distinguishable from the class definition in *Johnson*. The class in *Johnson* was denied class certification because each possible member maintained different title documents with differing and diverse conveyance language which would need to be reviewed individually to determine the parties' intention and the legal effects of each member's documents. The present case, however, deals with a standardized policy under which numerous State Farm clients were insured, each subject to default reduction of labor depreciation through the Xactimate settings used by State Farm (further examined below under the numerosity requirement). Defendant also argues that the class definition encompasses numerous unharmed individuals and is thus not adequately defined. Defendant contends that many individuals who received sufficient payment to cover the actual cost of complete repairs cannot be owed or have an amount still withheld by State Farm. However, as this court mentions below, whether an insured was injured by Defendant's conduct will depend not upon whether he or she received sufficient payment, but rather on whether Defendant withheld an amount it should have paid out had it not engaged in

labor depreciation in the first place. Finally, as to Defendant's argument that some information may be in the possession of the insured, Defendant did not specify what information; however, this court assumes Defendant refers to an insured's repair contracts and receipts which Defendant encourages its insureds to submit and upon which Defendant issues further payments if expenses are more than the initial ACV payment. Defendant's argument again fails because of this court's finding that Defendant's conduct of reducing labor depreciation is the crux of this matter, not whether the payments made were sufficient or reasonable.

Here, this court finds that the class is adequately defined and clearly ascertainable. Identifying class members would be based on a highly objective process; class members would be limited to insureds in the State of Mississippi, whose ACV payments were subject to labor depreciation, whose first claim was paid on or after June 23, 2014, and whose policy does not include form FE-3650 or any similar form allowing for labor depreciation. This court recognizes that identifying class members in this case may pose some clerical and administrative challenges; however, the court is persuaded that sorting and working through State Farm claim records is a feasible process by which to identify the class members.

### 2. Numerosity

Rule 23(a) first requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "[T]o satisfy his burden with respect to this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The focus under Rule 23(a) is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Id.* at 1038 (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). Relevant factors to consider when

deciding whether joinder is impracticable include the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *See Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620, 624 (5th Cir. 1999).

Here, numerosity is satisfied. Per Defendant's argument that the Snodgrass Declaration should be stricken, the court finds it necessary to note that even without the declaration, the numerosity requirement is still met. Defendant in its own brief and in its Report of Expert O'Connor referenced that there are 14,500 potentially relevant claims in the Data Report, thereby, convincing this court that the proposed class is numerous. Additionally, the policies entered between State Farm and its insureds are standardized policies and the methods used in calculating actual cash value payments is a default—pre-entered—setting within the Xactimate system. In Mississippi, the default settings appear to depreciate labor in all claims and policies. Plaintiff is likely, in this court's opinion, not the only person covered by such a policy in the State of Mississippi, and not the only person whose actual cash value was subject to labor depreciation. The numerosity requirement is met.

### 3. Commonality

Rule 23(a) next requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). To satisfy this requirement the claims of every class member must "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L. Ed. 2d 374 (2011). The common contention "must be of such a nature that it is capable of class-wide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Here, it appears that the commonality requirement has been met. The proposed class members, all of whom purchased insurance coverage from State Farm, each have a claim

concerning the issue of whether State Farm breached its policy contract by depreciating labor costs in calculating actual cash value payments. The Court finds that commonality is met.

### 4. Typicality

Rule 23(a) next requires that the claims or defenses of the representative party are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "[T]he test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen*, 186 F.3d at 625 (quoting *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997)).

For the same reasons stated under commonality, this court also finds that the typicality requirement is met. However, as to typicality, the court also notes that State Farm engaged in similar conduct when calculating, and paying, actual cash value payments for many of its policyholders. From the Foster deposition, this court understands that State Farm has default depreciation settings set within its Xactimate system according to the policy and the region of the claim. In Mississippi, the default appears to depreciate labor in all claims and policies. Here, Plaintiff's claims are typical of the claims of each proposed class member. Thus, the court finds that typicality is met.

### 5. Adequacy

Rule 23(a)(4) requires that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). A class representative must be "part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Defendant does not seem to oppose or take issue with Plaintiff's ability to fairly and adequately represent the interests of the proposed class. Here, Plaintiff is part of the class and

possesses the same interest and suffered the same injury as the proposed class members (reduction of labor depreciation in the insureds actual cash value payment). Also, Plaintiff's counsel has an extensive history in, and knowledge of, the litigation of class actions. This court finds that Plaintiff and her counsel are capable of fairly and adequately representing the interests of the class.

### D. Rule 23 Requirements

After having met the prerequisites under Rule 23(a), a plaintiff seeking class certification of a proposed class must also meet the requirements of Rule 23(b). In this case, Plaintiff seeks class certification pursuant to Rule 23(b)(3), or, in the alternative, certification of an issues class pursuant to Rule 24(c)(4). Plaintiff also seeks certification pursuant to Rule 23(b)(1).

#### 1. Rule 23(b)(3) Certification

Rule 23(b)(3) allows for class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

##### i. Predominance

This court finds that predominance is met. The predominance element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. In determining predominance, the court must "careful[ly] scrutin[ize] the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 829 F.3d. 370, 376, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one whether 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (quoting

2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:50, PP. 196–97 (5th ed. 2012)).

The trial court must "weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Tyson*, 829 F.3d at 376. For the following reasons, this court finds that common issues predominate in this case.

First, contrary to Defendant's argument, this claim does not require inquiry into the reasonableness of the disputed charges or payments and will not require individualized evidence. Instead, this claim is merely dependent on the amount State Farm owed its insureds under its policies in the first place yet deducted through labor depreciation, an amount calculated through State Farm's Xactimate system. Cases cited by Defendant in its brief are unconvincing. *See Nguyen v. St. Paul Travelers Insurance Co.*, No. 06-4130, 2008 WL 4691685 (E.D. La. Oct. 22, 2008) (denying class certification because whether Defendant made a sufficient pay out would depend on "specific damage to the insured's property, the nature of the repairs and materials required to repair or replace that damages" and more individualized facts); *Shafer v. State Farm Fire & Cas. Co.*, No. 06-8262, 2009 WL 2391238 (E.D. La. Aug. 3, 2009) (denying class certification because over one million line items would require particularized inquiry into "what the proper market price of [each] line item was at a specific time, what method an adjuster used to make an estimate, whether labor was included in an estimate, and whether any class members actually were overpaid"); *Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 WL 2265100 (E.D. La. Aug. 3, 2007) (predominance not found because "plaintiffs' claims require[d] highly individualized inquiries into the cause of each plaintiff's loss and the amount of the damages sustained at each of the plaintiff's properties"); *Schular v. LVNV Funding LLC*, No. H-14-3053, 2016 WL 685177 (S.D. Tex. Feb. 18, 2016) (predominance not met because "plaintiff . . . failed to present any evidence that [defendant] used standard contracts or that defendants engaged in

standardized . . . practices capable of raising issues of fact or law common to each class member"); *Crutchfield v. Sewerage & Water Bd.*, Civil Action No. 13-4801, 2015 WL 3917657 (E.D. La. June 25, 2015) (predominance not met because each homeowner would need to establish that their damage was caused by defendants actions and "[r]elevant to the inquiry would be the age, size, structure, and distance" of each home, thereby being highly individualized); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326 (N.D. Tex. 2012) (predominance not met because the issue would require extensive individual inquiries into each member's account and the circumstances surrounding each "call or contact"—case determining whether or not consent to contact was granted by e-mail, website, call, in person, etc.—requiring extensive inquiry into every contact made by every member). The courts in these cases reasoned that predominance was not met because the focus in these cases would be on issues and facts specific to individual members and not to the class.

In this case, the focus would not be on issues or facts specific to individual members, but rather issues and facts specific to the class. The focus is the policy entered into between State Farm and members of the proposed class; a policy which does not specify that labor depreciation would be deducted in calculating the actual cash value. The court agrees with Plaintiff that the issue is not whether the actual cash value payments paid by State Farm were reasonable or sufficient, but rather whether State Farm was entitled to deduct labor depreciation in the first place. If the policy is held to not have allowed for labor depreciation then the inquiry will be the amount of labor depreciation withheld by State Farm—amounts calculated through Xactimate (using default settings) and easily ascertainable without particularized inquiry into each class member's claim.

Second, this court finds that the fact that damages may need to be calculated "on an individual basis [does not] necessarily preclude class certification." *Steering Committee v. Exxon*

*Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (citing *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003). In *Bell*, the Fifth Circuit held that "class treatment . . . may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate." *Bell,* 339 F.3d at 307. Here, although the damages may not be "mechanical" in a strict sense—they are not automatically calculated and may require some administrative or clerical work—the method by which Plaintiff's expert proposes damages can be calculated is nonetheless simple and adequate. Plaintiff's expert, Toby Jerrell Johnson, reported that "determining the amount of still withheld non-material depreciation on a property damage claim through Xactimate is *simple*" and the amount of withheld non-material depreciation could be determined on a property claim within 2-3 minutes—less complex cases may take 1 minute and more complex cases may take 3-4 minutes. Johnson further reports that the process would require the "simple function of toggling the check-box" in each members' claim and comparing the difference in the amounts of withheld depreciation. However, even if it were to take the 15-20 minutes per claim, or the expected 3000 hours, as calculated by State Farm's expert O'Connor, this court finds that neither method preclude class certification. Predominance is met.

### ii. Superiority

This court finds that a class action is the superior method by which to fairly and efficiently adjudicate this controversy. In determining whether a class action is the superior method to adjudicate a controversy, the Court considers the following non-exhaustive list of factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in

the particular forum; and (D) the likely difficulties in managing a class action." Rule 23(b)(3)(A)–(D). Overall, "[t]he superiority analysis is fact-specific and varies depending on the circumstances of each case. *Ibe*, 836 F.3d at 529.

As to the first factor, this court will focus on negative value suits. "It is well established that class actions are often the superior form of adjudication when the claims of the individual class members are small." *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 412 (N.D. Miss. 2000) (citing *Amchem*, 521 U.S. at 616-17). The Fifth Circuit has held that "[t]he most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). "A negative value suit is one in which the 'stakes to each member are too slight to repay the cost of the suit.'" *Walton*, 190 F.R.D. at 412 (quoting *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

In the case at hand, Defendant does not argue that the proposed class members' claims are negative value suits. Defendant, instead, again argues that the Snodgrass Declaration, upon which Plaintiff relied in her negative value argument, is inadmissible. This court finds that, even without relying on the declaration, a class members' interest in individually controlling separate actions is low. It would be incredibly difficult for class members to pursue a claim against Defendant outside of this class action. This court, having a basic understanding of the sorting functions available in Excel, conducted its own basic sorting of the spreadsheet information. Relying on the "For All Years" tab, this court sorted the data to only include Homeowners Policy claims and also excluded any policy with form FE-3650; the court then sorted the data to include only claims recorded on or after June 23, 2014 (the court acknowledges that Date Recorded is not the same as Date Paid, but relied on Date Paid information to determine values as these claims were likely paid out after the date they were recorded); the court then hid any duplicate claims and organized the data of

"Calculated Total Labor Depreciation" from highest amounts to lowest amounts. From this basic sorting, the court then relied on the Excel count function to total the number of claims below $20,000. This court found that there are approximately 13,000 (or more) relevant claims with labor depreciation value at or below $20,000. *See Favreau v. U.S.*, 48 Fed. Cl. 774, 779 (2000) (holding that claims of $20,000 were not large enough to incite separate litigation). This court, fully aware that an accurate determination of class members will need to be conducted, finds that there are many similarly situated individuals in this state insured through State Farm under comparable standardized Homeowners policies who would be unable to pursue a claim against Defendant outside of this class action—any insured with a claim below Plaintiff's $738 claim and any insured with a claim at, below, or slightly above the cost of litigation would be left without any effective redress given the costs of pursing such claims individually.

As to the second factor, this court is not aware of any currently pending litigation in this state related to, or similar to, this controversy, and involving the same proposed class members, nor did the parties provide any evidence showing that such litigation by or against the same class members concerning this controversy is currently underway elsewhere in this state.

As to the third factor, this case was transferred to this court exactly one year ago on September 12, 2017. Since its transfer, pre-trial procedures have been in full force and the parties have actively dealt within this forum. It is the court's opinion that concentrating the litigation of the claims in this forum is preferred.

As to the fourth factor, this court does not anticipate difficulties arising in managing the proposed class. "[D]ismissal of a class action for management reasons is disfavored." *In re S. Cent. States Bakery Prods Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980). However, Defendant argues that this class action is unmanageable because "it will require individual mini-trials on

17

liability and/or damages issues." As stated earlier in its opinion, this court finds that this case will not result in mini-trials per each class member but will require that damages be calculated on an individual basis (which does not preclude certification). This court finds that this class action is manageable as the issues among the members are the same.

"[W]here claims are small, individuals have a weaker interest in individually controlling separate actions and thus . . . a class action is more likely to be superior; the lack of filed individual litigation provides evidentiary support for [this] proposition." NEWBERG ON CLASS ACTION § 4:69. Requiring that members of this proposed class individually file their own claim, instead of granting certification, would ultimately "waste judicial resources and leave most class members without an economically feasible remedy." *Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 491, 511 (S.D. Tex. 2004). Therefore, this court finds that a class action is the *superior* method by which to adjudicate this controversy.

Thus, having satisfied Rule 23(a) pre-requisites and Rule 23(b)(3) requirements, class certification under Rule 23(b)(3) is granted.

### 2. Rule 23(b)(1) Certification

Rule 23(b)(1) allows for class certification where "prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications," or "(B) adjudications. . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(1)(A) provides that a class action can be maintained if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards

of conduct for the party opposing the class action." Fed. R. Civ. P. 23(b)(1)(A). "If class members seek only monetary relief, there is no risk of incompatible standards of conduct in having those claims adjudicated individually." *Corley v. Entergy Corp.*, 222 F.R.D. 316, 321 (E.D. Tex. 2004) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 421 (5th Cir. 1998)). Many courts have held that Rule 23(b)(1)(A) certification of a class primarily seeking monetary relief is inappropriate. *See Johnson v. Geico Cas. Co.*, 673 F.Supp.2d 255, 270 (D. Del. 2009) ("Certification under Rule 23(b)(1)(A) is generally inappropriate where the primary relief sought is monetary damages."); *Zinser v. Accufix Research Inst.i, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001); *Morris v. Transouth Financial Corp.* 175 F.R.D. 694, 699 (M.D. Ala. 1997) (". . . this is primarily and principally an action to recover damages. As such, it is inappropriate for certification under Rule 23(b)(1)(A)); *Rambarran v. Dynamic AirwayS, LLC*, 2015 WL 4523222 (S.D. NY. 2015) ("Here, Plaintiffs are seeking monetary damages. . . [c]ertification under Rule 23(b)(1)(A) is thus unavailable.").

This court finds that certification of the class under Rule 23(b)(1)(A) is inappropriate. As per Plaintiff's submissions, including her complaint, it is evident that Plaintiff primarily seeks monetary relief. Thus, it would be improper to certify this class under Rule 23(b)(1)(A).

A class that fails to meet Rule 23(b)(1)(A) may still be certified under Rule 23(b)(1)(B). Rule 23(b)(1)(B) allows for certification of a class when "prosecuting separate actions by or against individual class members would create a risk of . . . (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). This is "usually applied when a 'limited fund' exists, such that non-class members seeking damages would likely deplete the fund

and deprive class members of any recovery." *Baker v. Wash. Mut. Fin. Grp., LLC.*, 193 Fed.Appx. 294, 297 (5th Cir. 2006) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2205, 144 L. Ed. 2d 715 (1999)). Here, Plaintiff does not contend that a limited fund exists. For this reason, the Court finds that certification would be improper under Rule 23(b)(1)(B).

Therefore, it would be improper to certify this class under either Rule 23(b)(1)(A) or 23(b)(1)(B).

### E.       Punitive Damages

Plaintiff also seeks to certify punitive damages. Plaintiff has suggested bifurcation, that the issues of liability and punitive damages be severed and tried separately. Defendant argues that bifurcation would violate the Seventh Amendment because the punitive damages jury would be required to consider factors already considered and addressed by the first jury.

Bifurcation raises Seventh Amendment problems if facts and issues addressed by the first jury are reexamined by a second jury. *Castano,* 84 F.3d at 750; *Mullen* 186 F.3d at 628. Mississippi law provides for mandatory bifurcation of punitive damages issues at trial. Specifically, "in any action in which punitive damages are sought" . . . "the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages." Miss. Code Ann. § 11-1-65(b). Furthermore, "if, and only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact." *Id.* § 11-1-65(c). As a general matter, this court concludes that the most prudent course of action is to strictly follow the procedure outlined in § 11–1–65(1)(b)-(c) if an award of compensatory damages is entered against the defendant.

### F. Notice to Potential Class Members

Rule 23(c)(2)(B) states that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.*

Because the court finds that class certification is proper under Rule 23(b)(3), notice to the class members must issue in accordance with Rule 23(c)(2)(B). Additionally, this court finds that because State Farm has access to, or through reasonable efforts can acquire, the names and addresses of the potential class members through its system and records, the best notice for this class is that of mailed individual notice. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 318, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

### Conclusion

Accordingly, Plaintiff's *Motion to Certify Class of a Monetary Damages Class, or in the Alternative, An Issues Class* [115] is GRANTED IN PART and Defendant's *Motion to Strike Declaration of T. Joseph Snodgrass* [126] is GRANTED.

SO ORDERED, this the 24th day of September, 2018.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE NORTHERN**
**DISTRICT OF MISSISSIPPI**